IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WESTFIELD INSURANCE COMPANY : | |
| and OLD GUARD INSURANCE : | |
| COMPANY : | CIVIL ACTION |
| Plaintiffs, : | |
| : | |
| : | |
| v. : | NO. 07-5496 |
| : | |
| ROBERT HOLLAND and LYNDA BAIO : | |
| and DAVID FIRMSTONE, as : | |
| Co-Executors of the Estate of Helen : | |
| Priester : | |
| : | |
| Defendants. : | |

## MEMORANDUM

BUCKWALTER, S. J.                                                                       December 19, 2008

      Currently pending before the Court is the Motion for Summary Judgment of Westfield Insurance Company and Old Guard Insurance Company and the Response in Opposition of Defendants Robert Holland and Lynda Baio and David Firmstone, as Co-Executors of the Estate of Helen Priester.  For the following reasons, the Court grants Plaintiffs' Motion for Summary Judgment.

I. **FACTUAL AND PROCEDURAL HISTORY**

      This Motion for Summary Judgment arises out of a claim for insurance coverage under policies issued to Robert Holland by Westfield Insurance Company and Old Guard Insurance Company (collectively "Westfield").  On December 27, 2007, Westfield filed the instant Declaratory Judgment Complaint against Holland and Lynda Baio and David Firmstone,

as Co-executors of the Estate of Helen Priester, seeking a declaration that Westfield has no obligation to defend or indemnify Holland in the underlying litigation filed by the Estate in the Court of Common Pleas of Bucks County, against Holland and Doylestown Hospital (the "Priester Litigation").  While Westfield afforded a defense to Holland in the Priester litigation subject to a reservation of rights to deny coverage, Westfield filed this Motion on the basis that coverage was not triggered under any applicable Westfield policy.

### A.     History of the Priester Litigation

Robert Holland was employed by Doylestown Hospital d/b/a/ Pine Run Community (the "Hospital") as the head groundskeeper.  (Pls.' Compl. ¶ 7.)  On May 5, 2006, Holland was found by Hospital staff sexually molesting, assaulting, and battering Helen Priester.  (Id. ¶ 10.)  At the time of the assault, Priester was a 92-year-old woman, wheelchair bound, who suffered from dementia. (Id. ¶ 11.)  Plaintiff alleges that Holland entered Priester's room, shut the door, removed her alarm bracelet, and carried her from her wheelchair to a couch in her room, where he proceeded to sexually assault her.  (Pls.' Br. in Supp. of Westfield Ins. Co.'s Mot. for Summ. J.,  Ex. A ¶¶ 17-18.)  Plaintiff argues that because of Priester's mental incapacity and inability to verbalize, she could not have given consent to Holland for the acts perpetrated by him.  (Id. ¶ 13.)  Holland details that for several years before May 5, 2006, he and Helen Priester enjoyed a friendship that involved mutual hugging, kissing, and caressing.  (Def. Holland's Verification in Derogation of Pls.' Mots. for Summ. J. ¶¶ 1-2.)  He recounts that on May 5, 2006, he visited Priester in Pine Run's Health Center and she expressed happiness to see him and did not exhibit objective signs of suffering mental disability.  (Id. ¶ 3.)  At the time of the visit, he and Priester kissed and caressed each other and she did nothing to indicate that she was not

consenting. (Id. ¶ 4.) Holland claims that Priester only became emotional, upset, and embarrassed when Hospital staff entered her room and acted as though she and Holland were engaging in inappropriate conduct. (Id. ¶ 5.)

On Dec 4, 2006, a case captioned Commonwealth v. Holland, CR-0000311-06, Holland pleaded guilty to aggravated indecent assault, institutional sexual assault, and three counts of indecent assault on a person who is incapable of giving consent. (Id. ¶ 13.)

Priester filed a civil suit against Holland in the Bucks County Court of Common Pleas. Counts I and II of the Priester complaint in the underlying litigation are directed against Holland. Count I avers that Holland was negligent in that he mistakenly and unreasonably believed that Priester gave her consent to his actions, despite her incapacity to do so. (Pls.' Br. Supp. Westfield Ins. Co.'s Mot. Summ. J., Ex. A ¶ 23.) Count II avers that Holland committed intentional, malicious, willful, outrageous, excessive, and reckless assault and battery on Priester on May 5, 2006, and on numerous prior occasions failed to regard the rights, safety, and position of Priester. (Id. ¶ 27.) As a result of the aforementioned allegations in the Priester Complaint, the Estate seeks compensatory damages from Holland. (Id. ¶ 44.)

In response to the Priester complaint, Holland filed an answer with new matter cross-claim. (Id., Ex. B.) In his pleading, Holland denied all allegations in the underlying complaint and contended that he had a relationship with Priester. (Id.) Holland requested defense and indemnity under the policies of insurance issued by Westfield to Holland for the policy period of October 19, 2005, through October 19, 2006.

B. **The Westfield Policies**

Westfield issued a primary farm policy to Holland, with a policy period running from October 19, 2005, through October 19, 2006. (Statement of Material Facts Supp. Pls.' Mot. Summ. J., Ex. K.)  The farm package policy includes farm liability coverage, containing an agreement under Coverage-H entitled, "Bodily Injury and Property Damage Liability" providing, in part:

> a. We will pay those sums that the "insured" becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the "insured" against any "suit" seeking those damages.  However, we will have no duty to defend the "insured" against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply...
> b. This insurance applies to "bodily injury" and "property damages" only if:
>    (1) the "bodily injury" or "property damage" is caused by an "occurrence..."

(Id.) The policy defines "bodily injury" as "bodily injury, sickness, or disease sustained by a person, and includes death resulting from any of these at any time period."  (Id.)  The farm liability coverage form defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (Id.)

In the same section, under the sub-heading "Exclusions" provides:

> This insurance does not apply to...Sexual Molestation, Corporal Punishment, or Physical or Mental Abuse.
> "Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment, or physical or mental abuse.

(Id.)

Westfield also issued a Commercial Umbrella insurance policy to Robert and Barbara Holland with a policy period running from October 19, 2005, to October 19, 2006. (Id., Ex. L.) The limit of liability was $1,000,000 per occurrence and the declaration page listed the business as farming. (Id.) The insuring agreement provided, as follows, in part:

> a.  We will pay "ultimate net losses in excess of the 'retained limit' that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'property damage' to which this insurance applies...
> b.  This insurance applies only if the "personal injury" or "property damage" occurs during the policy period and is caused by an "occurrence..."

(Id.)

Within the policy, "occurrence" is defined as:

> [A]n accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in "bodily injury" or "property damage." It also means an offense, or a series of offenses of the same or of a similar nature, which results in personal injury.

(Id.)

Bodily injury is defined as "bodily harm, sickness or disease, including required care, loss of services, or death resulting therefrom." (Id.)

The policy contains various exclusions labeled under the heading "Part III-WHAT WE DO NOT COVER." The most relevant exclusion is:

> B. Bodily injury, arising out of:
>   Any sexual misconduct committed by or at the direction of an 'insured.' Sexual misconduct includes, but is

5

>>not limited to, sexual abuse, sexual harassment, sexual molestation, incest or rape; or ...corporal punishment, physical or mental abuse.

(Id.)

### C. Choice of Law

The parties agree that the insurance contracts are governed by Pennsylvania law, as the applicable insurance policies were delivered in Pennsylvania, to a Pennsylvania resident and insured. Under Pennsylvania choice of law rules, claims arising from an insurance policy are governed by the law of the state in which the policy was delivered. Prudential Ins. Co. of Am. v. Prusky, Civ. A. No. 04-0462, 2008 WL 859217, at *17 (E.D. Pa. Mar. 31, 2008) (citing CAT Internet Servs. v. Providence Wash. Ins. Co., 333 F.3d 138, 141 (3d Cir. 2003)).

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

On summary judgment, it is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Boyle v. County of Allegheny, Pa., 139 F.3d 386, 393 (3d Cir. 1998) (citing Petruzzi's IGA Supermarkets, Inc. v.

Darling-Delaware Co. Inc., 998 F.2d 1224, 1230 (3d Cir. 1993).  Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655, (1962)); Tigg Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987).  If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.

  Although the moving party bears the initial burden of showing an absence of a genuine issue of material fact, it need not "support its motion with affidavits or other similar materials negating the opponent's claim."  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).  It can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims."  Id. at 325.  Once the movant has carried its initial burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec., 475 U.S. at 586.  "There must . . . be sufficient evidence for a jury to return a verdict in favor of the non-moving party; if the evidence is merely colorable or not significantly probative, summary judgment should be granted."  Arbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994), abrogated on other grounds, Showalter v. Univ. of Pittsburgh Med. Ctr., 190 F.3d 231 (3d Cir. 1999).

**III.  DISCUSSION**

  In their Motion for Summary Judgment, Plaintiffs list four issues to be decided in the affirmative:  (1) whether the Priester Litigation sets forth a covered "occurrence;" (2) whether the intentional act exclusion contained in the Westfield Policies precludes coverage; (3) whether

the claim for insurance coverage triggers coverage under an umbrella policy; and (4) whether the molestation exclusion contained in the Westfield policies precludes coverage. (Pls.' Br. in Supp. of Westfield Ins. Co.'s Mot. for Summ. J. 12.)  Plaintiffs contend that the underlying Priester Complaint fails to set forth an "occurrence", as defined by the policies.  (Id. 15-22.)  Plaintiffs also argue that policy exclusions preclude coverage. Accordingly, Westfield owes no duty of defense or indemnity. (Id. 27-30.)  The Court considers the arguments as set forth, and for the following reasons, grants Plaintiffs' Motion for summary judgment.

### A. Whether the Molestation Exclusions Contained in the Westfield Policies Precludes Coverage.

The principles governing contract interpretation of insurance are familiar and well-settled.  General rules of insurance contract construction require us to read the policies as a whole and construe them according to their plain meaning.  See Atlantic Mut. Ins. Co. v. Brotech Corp., 857 F. Supp. 423, 427 (E.D. Pa. 1994), aff'd, 60 F.3d 813 (3d Cir. 1995).  The task of interpreting [an insurance] contract is generally performed by a court rather than a jury.  Standard Venetian Blind Co. v. Am. Empire Ins. Co., 503 Pa. 300, 304,  469 A.2d 563, 566 (1983).  The goal of the task is to ascertain the intent of the parties as manifested by the language of the written instrument.  Id. at 305.  The terms within the policy must be given their ordinary meaning. State Farm Fire & Casualty v. Dunlavey, 197 F. Supp. 2d 183 (E.D. Pa. 2001); citing United Servs. Auto. Assoc. v. Elitzky, 517 A.2d 982 (Pa. Super. 1986). Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the agreement.  Id.  An insurer's duty to defend an insured in litigation is broader than the duty to indemnify, in that the former duty arises whenever an underlying

complaint may potentially come within the insurance coverage. The Frog, Switch & Mfg. Co. Inc. v. The Travelers Ins. Co., 193 F.3d 742, 747 (3d Cir. 1999). Where, however, the language of the contract is clear and unambiguous, a court is required to give effect to the language. Id.

Defendants argue that if the policies have been triggered by an "occurrence," then neither the molestation exclusion nor the intentional acts exclusions are applicable and do not preclude coverage, as Holland did not intend to molest Priester or cause her harm. (Defendant Baio and Firmstones' Resp. Pls.' Mot. Summ. J. ¶ 22.) Plaintiffs argue that the molestation exclusions are triggered as the claims for coverage arise from bodily injury arising out of the molestation and abuse of Priester. Whether Holland believed that he sexual assaulted Priester is unrelated to their applicability. (Pls.' Reply Supp. Mot. Summ. J., 11.)

Endowed with the responsibility of interpreting the insurance policies, the Court is concerned with the intent of the language in the policy, not, as Defendants suggest, with the intent of a party when it committed an act that may preclude coverage. There are two policies we are asked to consider in the context of claim preclusion: the personal umbrella policy, and the primary farm policy. The Court looks at each policy, in turn, to decide whether Holland's actions preclude coverage.

    1.    **Personal Umbrella Exclusion**

The personal umbrella policy contains the following exclusion under the heading: "Part III- WHAT WE DO NOT COVER."

> B. Bodily injury, arising out of:
> Any sexual misconduct committed by or at the direction of an 'insured.' Sexual misconduct includes, but is not limited to, sexual abuse, sexual

> harassment, sexual molestation, incest or rape; or ...corporal punishment, physical or mental abuse.

(Statement of Material Facts Submitted in Supp. Pls.' Mot. Summ. J., Ex. L.)

This Court reads and understands the policy language, to suggest that an action under this part of the policy will not be covered by Westfield. The terms of the exclusion preclude coverage to an insured, Holland, who has committed *any* sexual misconduct. "Sexual misconduct" is undefined and is followed by a non-comprehensive list of criminal offenses. By using a non-comprehensive list, the policy is not limiting the exclusion to just the named actions, but actions that are similar in nature. The Court finds that a reasonably intelligent person would include Holland's offenses to be part of the non-comprehensive list of sexual misconduct, since by nature, they are sexual and criminal.[1] Counter to Defendants' assertions, there is no mention of the insured's intent when committing these actions, rather, the language in the policy simply addresses the conduct that precludes coverage. For these reasons, we conclude that Holland's criminal actions are

---

1. 18 Pa.C.S.A. § 3125 (a) (6) Aggravated Indecent Assault, provides that: A person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if ... the complainant suffers from a mental disability which renders him or her incapable of consent.

        18 Pa.C.S.A. § 3124.2 (a) Institutional Sexual Assault, provides that:

A person who is an employee or agent of ... [a] licensed residential facility serving children and youth, or mental health or mental retardation facility or institution commits a felony of the third degree when that person engages in sexual intercourse, deviate sexual intercourse or indecent contact with an inmate, detainee, patient or resident.

        18 Pa.C.S.A § 3126 § A6 - Indecent Assault, provides that:

A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and...the complainant suffers from a mental disability which renders the complainant incapable of consent.

sexual misconduct under the policy exception, thus precluding coverage under the Personal Umbrella Policy.

### 2. Primary Farm Policy

The primary farm policy excludes acts of:

> w. Sexual Molestation, Corporal Punishment, or Physical or Mental Abuse. "Bodily injury" or "property damage" arising out of sexual molestation, corporal punishment or physical or mental abuse.

(Id., Ex. K.)

Defendants argue that the policy does not define "molestation;" therefore, it is governed by its ordinary meaning which they assert is "to disturb, interfere with or annoy, to accost and harass sexually."[2] (Def. Holland's Mem. in Derogation Pls.' Mot. Summ. J. 8). They further aver that each definition connotes an intent to harm, which was not an element of Holland's crimes as those crimes he committed did not require any factual finding regarding his mental state or that the person suffering the incapacity, was disturbed, interfered with, annoyed, accosted, or harassed. (Id. 8-9.) Defendants conclude that failure to show that Priester was subjected to any of the elements of the common definition of molestation means that molestation, as it appears in the policy, is ambiguous, and as such, Plaintiffs' Motion should be denied. (Id. at 9.)

The Court disagrees with Defendants' assertion that their definition of molestation connotes an intent to harm on the part of the actor. For example, a person who unknowingly listens to his or her music too loudly may have no intention of harassing their neighbor.

---

2. Defendants use quotations around what they describe as the usual and customary general definition of molestation but do not provide a citation to their usual and customary dictionary. As a result, the Court will consult a dictionary of its choice for the definition.

Nonetheless, the neighbor could find the music disturbing or annoying.  In the same way, Holland may have acted with no intention of harming Priester.  However, this does not mean that his actions did not interfere or annoy Priester.  As such, Holland's actions may constitute molestation under the policy despite the claim that he lacked the requisite mental state.

Moreover, the term "molestation" is undefined in the policy, using the rules of interpretation, the Court will give the word its ordinary meaning.  The dictionary definition of molest is  "to disturb, interfere with, or annoy; or to subject to unwanted or improper sexual activity."  The American Heritage Dictionary of the English Language 1164 (3d ed. 1992).  Regardless of Holland's intent, his actions, by law, were improper sexual activity.  The laws he admitted to violating are in place to protect people who cannot protect themselves.  Whether Priester said or acted as if she consented to Holland's actions is irrelevant.  It was determined that she lacked the capacity to make that decision. Through Holland's guilty pleas, he acknowledged that his sexual actions with Priester were improper.  Thus, they should be considered molestation under the Primary Farm Policy thereby precluding coverage.

Pennsylvania courts have not been opposed to enforcing molestation exclusions within policies.  See Neff v. Alterra Healthcare Corp., Civ. A. No. 05-01421, 2006 WL 3490816 (E.D. Pa. Dec. 4, 2006), aff'd, Civ. A. No. 06-5130, 2008 WL 821070 (3d Cir. March 28, 2008); see also 12th Street Gym Inc. v. Phila. Indemnity Ins. Co., Civ. A. No. 031931, 2006 WL 1652690 (Pa. Com. Pl. June 12, 2006).  This Court recognizes the uniqueness of the facts of this case.  However, uniqueness does not mandate a different result.  The Court sees no reason to elaborate on whether the facts would allow for coverage, because ultimately, the exclusions

within the Personal Umbrella and Primary Farm policies preclude coverage regardless of whether an "occurrence" took place.

**B.      Whether the Policy Exception Needed to be Explained to Holland.**

Defendants make a final argument stating that an insurer cannot assert an exclusion to defeat coverage unless it can establish that the existence, meaning, and effect of the exclusion has been explained to the insured at the time of the policy. See Hionis v. N. Mut. Ins. Co., 327 A.2d 363 (Pa. Super. 1974.)  However, the Pennsylvania Supreme Court modified this rule in Std. Venetian Blind Co., 469 A.2d 563 (Pa. 1983), when it held that where "the policy limitation relied upon by the insurer to deny coverage is clearly worded and conspicuously displayed, the insured may not avoid the consequences of that limitation by proof that he failed to read the limitation or that he did not understand it." Id. at 567.  Both policies in this case have conspicuous language demarcating their exceptions, and as discussed previously, the language is not ambiguous.  Therefore, there was no need for Westfield to explain the policies to Holland to enforce the policies' exclusions.

**IV. CONCLUSION**

In sum, the Court finds that Defendant Holland's behavior and subsequent criminal convictions are grounds for excluding coverage under Westfield's Personal Umbrella and Primary Farm policies.  Therefore, Plaintiffs' Motion for Summary Judgment is granted.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WESTFIELD INSURANCE COMPANY | : | |
| and OLD GUARD INSURANCE | : | |
| COMPANY | : | CIVIL ACTION |
|         Plaintiffs, | : | |
| | : | |
| | : | |
|         v. | : | NO. 07-5496 |
| | : | |
| ROBERT HOLLAND and LYNDA BAIO | : | |
| and DAVID FIRMSTONE, as | : | |
| Co-Executors of the Estate of Helen | : | |
| Priester | : | |
| | : | |
|         Defendants. | : | |

## ORDER

**AND NOW**, this 19th day of December, 2008, upon consideration of Plaintiffs Westfield Insurance Company and Old Guard Insurance Company's Motion for Summary Judgment (Docket No. 10), and Defendants Robert Holland and Lynda Baio and David Firmstone's Responses in Derogation of Plaintiffs' Motion for Summary Judgment (Docket Nos. 13, 15), it is hereby **ORDERED** that the Motion is **GRANTED.**

**JUDGMENT IS ENTERED** in favor of all Plaintiffs and against all Defendants. This case is closed.

**IT IS FURTHER ORDERED** that Plaintiffs have no obligation to defend or indemnify Defendant Robert Holland in connection with any claims asserted against him in the lawsuit brought by Defendants Lynda Baio and David Firmstone, as Co-Executors of the Estate of Helen Priester, arising out of the sexual assault and molestation of Helen Priester.

BY THE COURT:

*s/ Ronald L. Buckwalter*
RONALD L. BUCKWALTER, S.J.